IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18-CR-00106 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S MEMORANDUM IN |
| DWAYNE SHERON, | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTION TO SUPPRESS |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Brian S. Deckert, Assistant U.S. Attorney, and hereby responds in the attached memorandum to Defendant's Motion to Suppress (Doc. 16).

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Brian Deckert
      Brian Deckert (OH: 0071220)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3873
      (216) 522-8355 (facsimile)
      Brian.Deckert@usdoj.gov

**MEMORANDUM**

On March 7, 2018, Defendant Dwayne Sheron ("Defendant" hereinafter) was indicted by a federal grand jury for the Northern District of Ohio in a one count indictment alleging a violation of 18 U.S.C. § 922(g)(1).  (Doc. 1).  On March 13, 2018, Defendant was arraigned on the indictment and entered a plea of not guilty.  On August 9, 2018, Defendant filed a Motion to Suppress alleging a violation of his Fourth Amendment right.  (Doc. 16).

**STATEMENT OF FACTS**

On February 11, 2018, at approximately 3:10 pm, members of the Cleveland Police Department (CPD) were on routine patrol in the area of Giddings Road and Whitney Avenue in the City of Cleveland, Ohio.  Patrol Officers Webb and Aponte were in a marked police cruiser and wearing CPD uniforms.  Officers observed a 2006 Red Toyota Solara fail to stop for a stop sign at the intersection of Giddings Road and Whitney Avenue.  The officers initiated a traffic stop at E. 71st Street and Melrose Avenue.  The driver was identified as the Defendant who provided his driver's license and proof of insurance to Officer Webb.  Officer Webb returned to his cruiser and entered Defendant's information in his Aegis Mobile Data Terminal (MDT).  The MDT indicated that there was a possible local warrant for Defendant's arrest.  Officer Webb returned to the vehicle and requested Defendant exit the vehicle so that they could confirm the warrant.  Defendant became uncooperative so he was removed from the vehicle and placed in handcuffs.  When the driver's side door was opened, Officer Webb smelled an odor of marijuana emanating from the vehicle.  Defendant was placed in the back of the police cruiser and Officer Aponte requested CPD dispatch to confirm the warrant with the City of Cleveland Clerk of Courts.  Officer Webb returned to the vehicle and conducted a probable cause search due to the odor of marijuana and discovered a loaded firearm underneath the driver's seat.  A further search of the vehicle revealed marijuana in the center console area.  Dispatch informed the police

officers that Defendant no longer had an active warrant for his arrest.  The computed aided dispatch (CAD) for this stop reveals that from the time that this stop was first initiated until dispatch informed the officers that the Defendant had no warrants for his arrest, only seven (7) minutes elapsed.

The CPD utilizes a local warrant database maintained by the police department in which local court bench warrants may be entered by the City of Cleveland Clerk of Courts.  The system is connected to the police cruisers' MDT units and can be accessed by police officers during traffic stops.  However, police officers will not arrest solely on the showing of a possible warrant on their MDT, but rather, they will ask the radio dispatch officer to contact the City of Cleveland Clerk of Courts to confirm the warrant.  This is done because some of the information in the local warrant database has not been updated.  In this case, Officer Webb informed Defendant that the computer showed a possible "227," which means a local warrant, and that he was being detained only to confirm it through dispatch.  The police officer searched the vehicle due to the odor of marijuana, unrelated to the warrant issue.

## LAW AND ARGUMENT

Defendant's Motion to Suppress generally alleges that his Fourth Amendment right against unreasonable searches and seizures was violated because there is no evidence that there was a warrant for his arrest.  (Doc. 16, PageID# 45).  The fact that a warrant ultimately did not exist for Defendant's arrest does not make the search of the vehicle unreasonable.

**I.  POLICE OFFICERS MAY DETAIN AN INDIVIDUAL DURING A TRAFFIC STOP TO CHECK FOR THE EXISTENCE OF WARRANTS.**

The police officers in this case initiated a traffic stop upon Defendant's vehicle due to a failure to stop at a stop sign.  "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair,* 524 F.3d 740, 748 (2008) (citing *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)).  "An officer

3

may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law." *United States v. Bell,* 555 F.3d 535, 539 (6th Cir. 2009) (citing *Blair,* 524 F.3d at 748). "To detain the motorist any longer than is reasonably necessary to issue the traffic citation . . . the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend,* 305 F.3d 537, 541 (2002).

The Sixth Circuit has held that a traffic stop "is more akin to an investigative detention rather than a custodial arrest, and the principles announced in *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), apply to define the scope of reasonable police conduct." *United States v. Hill,* 195 F.3d 258, 264 (6th Cir. 1999). The police officer in this case requested the Defendant's license and proof of insurance and checked the MDT to see if he had any outstanding warrants. "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez v. United States*, 135 S.Ct. 1609 (2015), *citing Illinois v. Caballes,* 543 U. S. 405, 408 (2005). Those inquiries "involve checking the driver's license, **determining whether there are outstanding warrants against the driver**, and inspecting the automobile's registration and proof of insurance." *Rodriguez,* 135 S.Ct. 1615 (emphasis added).

In this case, the CPD officers had probable cause to stop the vehicle because they had just witnessed a traffic violation. As a part of their routine investigative function, the police inquired into the Defendant's driving status and whether he had any outstanding warrants for his arrest. This was a brief routine investigative detention, merely seven minutes, which was performed in relation to the traffic stop and cannot be said to be so unreasonable that it ran afoul of the Fourth Amendment.

4

II. **THE EXCLUSIONARY RULE DOES NOT APPLY WHERE AN INACCURATE COMPUTER RECORD INDICATED THE EXISTENCE OF A WARRANT FOR THE DEFENDANT AND PROVIDED THE POLICE WITH A GOOD FAITH BASIS TO BRIEFLY DETAIN THE DEFENDANT.**

In *Arizona v. Evans*, 514 U.S. 1 (1995), the United States Supreme Court dealt with a similar situation where the police observed the defendant, Isaac Evans, driving the wrong way on a one-way street and initiated traffic stop. *Id.* at 4. The police entered Evans' information into their computer and discovered that he had a suspended license and a warrant for his arrest. *Id.* Evans was placed under arrest pursuant to the warrant and while being handcuffed he dropped a marijuana cigarette. *Id.* The police smelled marijuana and searched the vehicle and discovered a bag of marijuana under the passenger seat. *Id.* Police later discovered that the arrest warrant had been quashed 17 days earlier. *Id.* The Arizona Supreme Court upheld the application of the exclusionary rule and suppressed the evidence as a deterrence to those who keep records in the criminal justice system. *Id.* at 6. The United States Supreme Court reversed and held:

> If court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction. First, as we noted in *Leon*, the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. Second, respondent offers no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.
>
> * * *
>
> Finally, and most important, there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed.
>
> * * *
>
> There is no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record. Application of the

5

>*Leon* framework supports a categorical exception to the exclusionary rule for clerical errors of court employees.

*Id.* at 14-16 (citations omitted).

In the instant case, the City of Cleveland Clerk of Courts would enter local bench warrants into the system used by CPD and they were responsible for updating them as warrants were cleared. The police officers knew this which is why the officer did not arrest the Defendant but placed him in the back of the police cruiser until Dispatch could verify with the Clerk of Courts that the warrant was still active. As will be seen on the bodycam video, the police informed the Defendant of this procedure but he became uncooperative and refused to exit his vehicle. An officer may order the driver and any passengers out of the car pending completion of a traffic. *See, Maryland v. Wilson*, 519 U.S. 408 (1997). Further, the fact that handcuffs were employed when the Defendant was placed in the back of the police cruiser, does not automatically equate to an arrest. "[T]he use of guns, handcuffs, and detention in a police cruiser do not automatically transform a *Terry* stop into an arrest, these displays of force must be warranted by the circumstances." *Smoak v. Hall*, 460 F.3d 768, 781 (6th Cir. 2006) *citing Houston v. Doe*, 174 F.3d 809, 815 (6th Cir. 1999). The police officers briefly detained the Defendant in back of the police cruiser to further investigate the issue of the arrest warrant. This factual scenario does not even rise to the level of the situation in *Evans* where police acknowledged that they **arrested** Evans solely on the basis of the warrant. Regardless, the police in this case had a good faith basis to place the defendant in the back of the police cruiser even if the computer information turned out to be inaccurate.

### III. POLICE OFFICERS MAY SEARCH THE INTERIOR OF A MOTOR VEHICLE BASED UPON THE SMELL OF MARIJUANA.

The evidence that the Defendant is seeking to exclude was not found upon his person but rather in the motor vehicle. If Defendant is contesting the actual search of the motor vehicle then

6

the relevant question would turn to whether the police possessed probable cause to conduct the search. The search of the motor vehicle was predicated on the police officer detecting an odor of marijuana emanating from the vehicle. In the Sixth Circuit the smell of marijuana emanating from a vehicle has been repeatedly held to establish probable cause to believe that marijuana would be found inside. *See, United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). The Sixth Circuit has followed *Garza* consistently in holding that the detection of a narcotic's odor, "by itself, is sufficient to establish probable cause to conduct a lawful search of a vehicle." *United States v. Crumb*, 287 Fed. Appx. 511, 514 (6th Cir. July 29, 2008). *See, United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005) (affirming the denial of a motion to suppress where police smelled marijuana and saw it in plain view in the seat of the vehicle so that "there was probable cause to search the car at that point."); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) (officers' detection of the smell of marijuana coming from the defendant's vehicle provided them with probable cause to search without a search warrant which turned a lawful *Terry* stop into a lawful search); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) ("This court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search.").

      In the instant matter, the police officer detected the odor of marijuana from inside of the vehicle which provided probable cause for the search of the vehicle. The firearm was located underneath the driver's seat and marijuana was found in the center console. The Defendant argues some impropriety with the Officer's decision to detain the Defendant in the back of the police cruiser to verify a warrant, however, that does not affect the probable cause to search the vehicle.

**CONCLUSION**

The Defendant has failed to raise any meritorious issues warranting the exclusion of evidence in this case.  The police officer witnessed a traffic infraction which provided probable cause to perform a traffic stop and as an extension of that investigation he inquired if there were any warrants for the Defendant's arrest.  The officer's computer showed a possible local warrant for the Defendant's arrest.  The police officer requested the Defendant exit the car so that he could confirm the warrant with the City of Cleveland Clerk of Courts.  The Defendant became uncooperative and was placed in handcuffs and seated in the back of the police cruiser.  The officer smelled marijuana emanating from the vehicle and performed a search based upon probable cause.  A loaded firearm was located under the driver's seat and marijuana was found in the center console.  The Defendant's sole reason in his motion to suppress for the exclusion of evidence in this case is because it was later determined that there was not a warrant for the Defendant's arrest.  However, the Defendant was only briefly detained for an investigative purpose and the police acted in good faith.  For the foregoing reasons, the United States of America respectfully requests this Honorable Court deny Defendant's motion to suppress.

    Respectfully submitted,

    JUSTIN E. HERDMAN
    United States Attorney

By:   /s/ Brian Deckert
    Brian Deckert (OH: 0071220)
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3873
    (216) 522-8355 (facsimile)
    Brian.Deckert@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Brian S. Deckert
Brian S. Deckert
Assistant U.S. Attorney